## VASSAR v. LEVY.*

### No. 16830.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1938.

*Writ of certiorari denied by Supreme Court Jan. 10, 1939.

E. T. Froeba and George McCulloch, both of New Orleans, for appellant.

Benjamin Y. Wolf, of New Orleans, for appellee.

## McCALEB, Judge.

The plaintiff, Roland Vassar, instituted this suit for the recovery of property damage and personal injuries he sustained in a collision between his automobile and a Ford sedan driven by Warren Levy, the minor son of the defendant, Dr. Joseph Levy. The petition alleges that on March 31, 1937, at about 5:00 a. m., the plaintiff was driving his Chevrolet automobile in the City of New Orleans on Jackson Avenue in the direction of the Mississippi River; that when he reached the intersection of Jackson and St. Charles Avenues, he brought his vehicle to a complete stop and looked down the lakeside roadway of St. Charles Avenue for oncoming traffic; that, having perceived that no traffic was approaching on St. Charles Avenue, he proceeded to cross the intersection and that, after he had practically traversed the lakeside roadway thereof, a Ford V-8 automobile, driven by the defendant's minor son, being operated therein towards uptown at a speed in excess of 45 miles per hour, crashed into the left side of his automobile near the rear. Plaintiff further avers that the collision was caused through the negligence of defendant's son in operating the Ford car at an excessive rate of speed and that, as a result thereof, he sustained damages to his person and property in the sum of $292.85, for which he seeks recovery.

In due course, the defendant appeared and filed exceptions to the petition which were overruled. In his answer, he admitted the happening of the accident but denied that his son was guilty of fault in the premises. He avers that his son was driving the Ford automobile up St. Charles Avenue; that, upon approaching the corner of Jackson Avenue, he slowed the speed of the car; that, at that time, a street car, being operated on Jackson Avenue in the direction of Claiborne Avenue, was crossing the lakeside intersection of St. Charles Avenue; that said street car was in the line of vision of the plaintiff and, because of this fact, the latter was not in a position to observe the traffic proceeding up St. Charles Avenue and that it was negligence on his part to attempt to negotiate the crossing under these circumstances. In short, defendant denies any fault on the part of his son and ascribes that the accident was due solely to the plaintiff's failure to obey the traffic ordinances of the City of New Orleans and that, if it should be held that his son was guilty of negligence in any particular, then plaintiff's negligence was such as to bar his recovery.

On these issues a trial was had and the judge, after hearing the evidence, dismissed plaintiff's suit at his cost. Hence this appeal.

We notice, at the outset, that the defendant has renewed, in this court, his exception of no cause of action. It is argued that the fact that plaintiff alleges that he looked down St. Charles Avenue and did not see any traffic, evinces negligence on his part because if he had looked properly he would have seen the automobile, driven by young Levy, approaching. We find no merit in the contention. Whether the plaintiff should have seen the defendant's son at the time he looked before entering the intersection is a question of fact which can be disposed of only by a trial of the merits of the case and not upon an exception which, for the purpose of hearing, admits all facts well pleaded. Our decision in Arbo v. Schulze et al., 173 So. 560, cited by the defendant, is based on an entirely different state of facts and bears no resemblance to the allegations made in the petition under attack.

We therefore pass on to a consideration of the merits of the case. The scene of the accident is the right angle intersection of St. Charles and Jackson Avenues. St. Charles Avenue is a boulevard bearing two sets of street car tracks on its neutral ground. On each side of this neutral ground there are paved lanes for vehicular traffic. The lakeside lane is used by vehicles proceeding in the direction of uptown, or towards Carrollton Avenue, whereas the riverside lane is designated for use by traffic traveling downtown or in the direction of Canal St. Jackson Avenue, like St. Charles, is a double highway with two sets of street car tracks on its neutral ground. The uptown traffic lane is devoted to vehicles proceeding towards the Mississippi River, whereas on

the downtown roadway traffic travels in the opposite direction.

The plaintiff testifies that on the morning of the accident he was traveling on the uptown roadway of Jackson Avenue in the direction of the Mississippi River; that, when he arrived at the intersection of St. Charles Avenue, he brought his car to a full stop and looked down the lakeside roadway thereof for oncoming traffic and that, finding there were no approaching vehicles, he proceeded across the intersection. He further declares that, when he stopped at the intersection, he noticed the presence of a Jackson Avenue street car (traveling in the opposite direction from that in which he was driving) traversing the St. Charles Avenue crossing and that the street car was about to enter the lakeside roadway of St. Charles Avenue from the neutral ground when he started to negotiate the same. Under these circumstances, he says, he felt that it was safe to proceed and that he had practically completed the lakeside roadway crossing when, suddenly and without warning, the Ford automobile driven by defendant's son, being operated at a high rate of speed, crashed into the left rear side of his automobile, at a point near the St. Charles Avenue neutral ground, knocking it into a small post situated nearby.

The plaintiff's testimony, with respect to the negligent acts of the defendant's son, is fully corroborated by three disinterested eye-witnesses to the occurrence, viz., Harris and Lauve, taxicab drivers, and Prejean, the conductor of the street car which was traversing the intersection at the time of the accident. All of these witnesses verify the fact that the defendant's son was operating the Ford automobile at a speed variously estimated at between 40 and 50 miles per hour and also establish beyond peradventure that the defendant's son swerved the Ford around the rear of the street car and collided with plaintiff's automobile at a point very near to the neutral ground of St. Charles Avenue.

A review of all of the evidence in the case leaves no doubt in our minds that young Levy was operating the Ford automobile in a most reckless manner and without due regard for the rights of others. He and another boy were driving home from a party at five o'clock in the morning at a speed in excess of that permitted by law. Trailing his car was another automobile driven by a friend of his named Gaspaille who frankly admits that he was traveling at a speed of between 30 and 35 miles per hour. It was suggested by plaintiff's witness Lauve, a taxicab driver (whose cab was passed by the Levy and Gaspaille cars approximately one block from the accident), that the drivers of these cars were engaged in racing each other. This casual observation by the witness is not without foundation as he estimates the speed of the passing automobiles at between 40 and 50 miles per hour.

We next consider the defendant's charge that plaintiff was guilty of contributory negligence. The defense seems to be predicated on an assumption that the plaintiff either failed to stop at the St. Charles Avenue crossing or that, if he did stop, he was imprudent in entering the intersection while the street car was proceeding thereon inasmuch as it is said that his vision with respect to traffic traveling on the roadway was masked by the presence of the street car.

We are not impressed by the arguments advanced in an attempt to sustain this point. Plaintiff's testimony appears to us as being most frank and sincere. He and his witness Harris avouch that he stopped at the intersection and there is no evidence to rebut their statements. Furthermore, at the time plaintiff stopped his car at the intersection, the street car was upon the neutral ground and his vision with respect to traffic proceeding up St. Charles Avenue was not in any way obscured. The fact that he looked and did not see the Ford automobile in St. Charles Avenue before he entered the intersection is merely evidence of the high and unlawful rate of speed at which the defendant's son was driving because plaintiff says that, although he could see down St. Charles Avenue for a space of approximately three-fourths of a block, no traffic was in sight at the time he attempted to cross. Moreover, it was not negligence for the plaintiff to cross the intersection while the street car was proceeding over it in the opposite direction. As a matter of fact, the presence of the street car afforded to the plaintiff a certain assurance that it was safe for him to traverse the intersection as he was entitled to believe that motorists proceeding on St. Charles Avenue would have their cars under control and would recognize the right of way over the

crossing which had already been established by the preemption of the street car.

Since we are of the opinion that the defendant is liable, there only remains the assessment of the quantum of damages. That plaintiff's car was severely damaged is plainly shown by pictures taken of it shortly after the accident. He has proved to our satisfaction that the cost of making the repairs to his car amounted to $99.85 and that the amount of the bill is reasonable.

In an attempt to discount the damage to plaintiff's car, the defendant placed upon the stand a mechanic named Joseph Levy who weakly proclaimed that he would have repaired the automobile for $35. We find that his evidence is insufficient to offset the positive testimony of Edward Salvant, the mechanic who actually performed the repair work to the car.

In addition to the damage to his automobile, plaintiff also suffered personal injuries consisting of multiple brush burns of the body, contusions and bruises. Dr. H. C. Magee, the physician who treated him, testified that his injuries were not serious but were quite painful. Plaintiff prays for an allowance of $175 for his pain and suffering which we consider as not only a reasonable but a modest request. It is true that he was not so ill as to be compelled to be confined to bed but he certainly suffered some physical pain accompanied by mental anguish as a result of the accident. Indeed, both litigants in this case are fortunate that plaintiff's injuries were not more serious in view of the severity of the blow received by his car.

Plaintiff also seeks to recover the sum of $18 for treatment rendered to him by Dr. Magee. This item is not in dispute and it is accordingly allowed.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Roland Vassar, and against the defendant, Dr. Joseph Levy, in the full sum of $292.85 with legal interest thereon from judicial demand and all costs.

Reversed.